IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PETRA NOVAL,                                        Case No. 3:25-cv-01708-JR

                                                   OPINION AND ORDER

                        Plaintiff,

        v.

COAST PRODUCTS, INC, an Oregon
corporation, TYLER PETERSON, an
individual, and LAUREN DAILEY, an
individual,

                                    Defendants.
_____

RUSSO, Magistrate Judge:

        Defendants Coast Cutlery Co. Inc. d.b.a. Coast Products, Inc. ("Coast"), Tyler Peterson,

and Lauren Dailey move to dismiss plaintiff Petra Noval's second amended complaint ("SAC")

Page 1 – ORDER AND OPINION

pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated below, defendants' motion is granted, and this case is dismissed.

## DISCUSSION

### I.    Background

Plaintiff is an individual residing in Huntsville, Arkansas. Sec. Am. Compl. ¶ 3 (doc. 18). Coast is an Oregon corporation that employed plaintiff as an art director between February 25, 2019, and August 20, 2024. *Id.* at ¶¶ 3-4. Peterson is Coast's president, and Dailey is Coast's administrative director. *Id.* at ¶¶ 5-6.

Plaintiff worked on-site in Coast's Portland headquarters from February 2019 until the COVID-19 pandemic began in March 2020, at which point plaintiff and other employees transitioned to full-time remote work. *Id.* at ¶ 12. In August 2021, plaintiff requested and was approved to work remotely on a permanent basis and continued to work remotely through August 2024. *Id.* at ¶¶ 13, 15. During plaintiff's employment, one coworker, Jason Borger, was promoted above plaintiff. Numerous coworkers, including Borger, were allowed to work remotely without restriction. *Id.* at ¶¶ 16-17.

On May 9, 2024, plaintiff requested paid time off ("PTO") from May 10 until May 24, which was approved. *Id.* at ¶ 18. During that time, one of plaintiff's work projects was reassigned. *Id.* On May 22, 2024, plaintiff emailed supervisors Joe Parker and Zach Zarosinski requesting that future discussions regarding her employment take place in writing as an accommodation for her attention deficit hyperactivity disorder ("ADHD").[1] *Id.* at ¶¶ 12, 18. Plaintiff disclosed her ADHD

---

[1] Plaintiff has been diagnosed with ADHD, autism spectrum disorder level 1, generalized anxiety disorder ("GAD"), and post-traumatic stress disorder, but her claims relate only to ADHD and GAD. Sec. Am. Compl. ¶ 3 (doc. 18).

diagnosis to Zarosinski in 2019 but did not request an accommodation until May 22, 2024. *Id.* at ¶ 22.

On May 24, 2024, Parker emailed plaintiff and explained that, due to plaintiff's remote status, tasks she was responsible for were often performed by others and that "for this relationship to work out, [Coast] would like to have [plaintiff] back in Portland" two or three days a week. *Id.* at ¶ 23. On June 3, 2024, plaintiff requested to continue working remotely from her Arkansas home as an accommodation for ADHD and anxiety. *Id.* at ¶ 24. On June 6, 2024, Parker responded that Coast had been "getting by" with plaintiff working remotely, but her "inability to come into the office [had] caused inefficiencies." *Id.* at ¶ 25.

Parker attached to his email an art director job description plaintiff had not previously seen, a medical inquiry form, an FMLA certification form. *Id.* at ¶¶ 25-26. Daily later explained to plaintiff that "we have revised the job description as we are legally allowed to do based on the growth that Coast has experienced and based on the addition of a new business unit for ZX batteries since you were initially hired, and since you started working remotely out of state." *Id.* at ¶ 33 & Ex. K (doc. 18). The updated job description included an essential job functions section that included the "[a]bility to work personally in office for meetings, photo shoots, and product troubleshooting" and a desired attributes section that listed "a high level of emotional intelligence, including empathy, self-awareness, and the ability to manage one's own emotions as well as understand and influence the emotions of others." Sec. Am. Compl. ¶¶ 30-31 & Ex. B (doc. 18).

The "questions to help determine effective accommodation options" of the medical inquiry form included a list of essential job functions from the revised job description, including "[a]bility to work personally in office for meetings, photo shoots, and product troubleshooting[,]" and asked whether a hybrid work situation requiring plaintiff to work in-office one-to-two days a week would

Page 3 – ORDER AND OPINION

provide a reasonable accommodation. Sec. Am. Compl. at ¶¶ 34-35 (doc. 18). Plaintiff contested that question and Coast removed it. *Id.* at ¶ 36. Plaintiff's medical provider completed the form, noting plaintiff's ADHD and anxiety and resulting limitations, and wrote that plaintiff was able to perform her essential duties from her Arkansas home, recommending that plaintiff be allowed to continue working from home. *Id.* at ¶¶ 37-38.

On June 6, 2024, plaintiff sent an email to coworkers in which she discussed workplace rights and accused Parker of discrimination and retaliation.[2] *Id.* at ¶ 27 & Ex. Y (doc. 18). Parker later emailed the marketing department, except plaintiff, apologizing "for the emails and possibly phone calls some or all of you have been getting from [plaintiff]." Sec. Am. Compl. at ¶ 27 (doc. 18). The next day, Dailey communicated to plaintiff that she would take over communications regarding plaintiff's employment matters and that plaintiff's "communications have been, and will continue to be, vetted through [Peterson] and myself[.]" *Id.* After that exchange, Zarosinski stopped assigning plaintiff new work or scheduling one-on-one meetings with plaintiff and requested to be removed from emails regarding plaintiff's employment matters, and no member of the marketing team communicated with plaintiff about work projects for the remainder of her employment. *Id.*

On June 12, 2024, Dailey sent plaintiff an email explaining that plaintiff's PTO balance was at zero and that if she continued not working, Coast would not pay her, although plaintiff had

_____

[2] Plaintiff also made harassment complaints against Parker and Peterson and includes communications related to, and descriptions of, those complaints in the SAC, basing some of her claims, in part, on (1) Dailey noting plaintiff had included language related to Peterson in her complaint regarding Parker and inquiring as to how plaintiff would like to proceed; and (2) Dailey removing the third-party investigator assigned to the complaints from the email thread regarding plaintiff's personnel issues. Sec. Am. Compl. at ¶¶ 43-44, 48, 71, 96, 102, 112, 118, 136, 140 (doc. 18).

returned to work on her assigned projects the week of June 3.[3] *Id.* at ¶¶ 40-41. When plaintiff followed up on her pay, Dailey explained there was a payroll error and Coast had corrected the issue with a check. *Id.* at ¶¶ 42-43. That check was issued on June 18, but was reversed due to additional errors, and the second corrective check was not issued until July 16. *Id.* at ¶¶ 45-46.

On July 18, 2024, Dailey emailed plaintiff regarding the interactive process around her accommodations request. *Id.* at ¶ 50. In that email, Dailey addressed job functions for which plaintiff had proposed remote solutions, asked follow-up questions and offered proposed on-site alternative solutions, such as flying plaintiff to Portland a few times a month for photoshoots, having plaintiff on-site for a week at a time for planning sessions, and flying plaintiff to Portland once or twice a quarter to build trade show booths. *Id.* at ¶ 51. Dailey also asked whether plaintiff was willing to complete the interactive process or voluntarily quit her job. Dailey explained that plaintiff's communication style had been combative and adversarial, deterring from Coast's intention to engage in a conversation about accommodations that would allow plaintiff to work from Arkansas, adding that Coast was confident that if plaintiff submitted a claim to the EEOC, the EEOC would determine that Coast had engaged in an appropriate interactive process. *Id.* at ¶¶ 50, 52.

On July 31, 2024, in response to a list of potential scenarios provided by plaintiff, Dailey sent plaintiff an email that included a severance offer in which, in exchange for a release of all claims, Coast would pay plaintiff eight weeks of severance and unused PTO days, offer health benefits through the month she left and provide COBRA coverage for two months. *Id.* at ¶ 53 & Ex. Q (doc. 18).

---

[3] After plaintiff's approved leave, she took an additional week of PTO related to "the aftermath of an EF-3 tornado strike." Sec. Am. Compl. at ¶ 41 (doc. 18).

Page 5 – ORDER AND OPINION

On August 9, 2024, Dailey explained that Coast understood plaintiff intended to provide a demand letter rather than complete the interactive process, but requested that, since plaintiff was not performing work activities, she take administrative leave while plaintiff's attorney prepared the demand letter, noting that plaintiff could use her PTO during that time. Sec. Am. Compl. ¶ 55 (doc. 18) & Ex. E (doc. 18). On August 14, Plaintiff responded that she would forgo the demand letter and proceed with the scheduled EEOC intake process, then asked if Coast approved or denied her request to work from her Arkansas home. Sec. Am. Compl. ¶ 56 (doc. 18) & Ex. E (doc. 18). The next day, Dailey replied that plaintiff's request was not a reasonable accommodation and was denied, added that Coast had agreed to plaintiff working some days each month in Arkansas and flying to Portland "to work 4 out of every 10 business days" in the office, which plaintiff had rejected[4], and asked plaintiff whether she had "any other effective alternative accommodations other than to work remotely full time from Arkansas" that should be considered. Sec. Am. Compl. ¶ 57 (doc. 18) & Ex. E (doc. 18). Plaintiff acknowledged receipt of the accommodation denial, indicating she had no other suggestions, and asked where the parties went from there. On August 20, Dailey sent plaintiff an email terminating her employment effective that day. Sec. Am. Compl. ¶ 60 (doc. 18).

Plaintiff initiated a short-term disability claim on August 19, 2024. *Id.* at ¶ 64. In that process, Coast submitted the updated job description. *Id.* at ¶ 65. The claim was initially approved but subsequently denied effective October 22, 2024, with the insurer citing a lack of evidence to support that plaintiff was "impaired from performing the essential functions of her job[.]" *Id.* at ¶ 67. Plaintiff also filed a charge of discrimination with the EEOC on September 5, 2024. *Id.* at ¶ 8.

---

[4] In an EEOC filing, Coast explained that on July 19, 2024, plaintiff "did acknowledge an agreement to fly into Portland 1-2 times a month for essential photoshoots as well as 1-2 times per quarter for trade shows." Sec. Am. Compl. ¶ 59 (doc. 18) & Ex. R, at 9 (doc. 18).

During that process, Coast's attorney referred to plaintiff's August announcement to Coast that she would be continuing with the EEOC process as "seemingly . . . an effort to extort additional severance[.]" *Id.* at ¶ 70. The EEOC issued a determination and notice of rights on July 31, 2025, dismissing the charge and issuing plaintiff's right to sue. *Id.* at ¶ 9.

Plaintiff filed the initial complaint in this matter on September 9, 2025. Compl. (doc. 1). She filed the SAC on March 25, 2026, asserting claims against Coast for disability discrimination under 42 U.S.C. § 12112(a), Or. Rev. Stat. § 659A.112, and Ark. Code § 16-123-107; failure to accommodate under 42 U.S.C. § 12112(b)(5)(A) and Or. Rev. Stat. § 659A.118; retaliation under 42 U.S.C. § 12203(a) and Or. Rev. Stat. § 659A.109; and interference with ADA rights under 42 U.S.C. § 12203(b); as well as claims Peterson and Dailey for aiding and abetting under Or. Rev. Stat. § 659A.030(1)(g). Sec. Am. Compl. ¶ 59 (doc. 18).

## II.    Standard

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the claims. To survive a motion to dismiss, the complaint must state 'enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When a party brings a motion to dismiss, the court will liberally construe the complaint in favor of the plaintiff and take its allegations as true. *Rosen v. Walters*, 719 F.2d 1422, 1424 (9th Cir. 1983). However, bare assertions that are a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed as true." *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009). To state a plausible claim to relief, the plaintiff must allege facts in the complaint that "contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Bacca*, 652 F.3d 1202, 1216 (9th Cir. 2008).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. *See, e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The court, in many circumstances, instructs the

Page 7 – ORDER AND OPINION

pro se litigant regarding deficiencies in the complaint and grants leave to amend. *Eldridge v. Block,* 832 F.2d 1132, 1136 (9th Cir. 1987). Nevertheless, a pro se plaintiff's claims may be dismissed without leave to amend where it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him or her to relief. *Barrett v. Belleque,* 544 F.3d 1060, 1061-62 (9th Cir. 2008).

## III. Analysis

Defendants contend the factual allegations plaintiff pleads in the SAC do not support a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) and are not capable of forming a legally cognizable claim for relief. Defs.' Mot. Dismiss 1 (doc. 19). Defendants move for dismissal of plaintiff's claims with prejudice and without further leave to amend. *Id.*

### a. Disability Discrimination Under 42 U.S.C. § 12112(a)

Under the Americans with Disabilities Act ("ADA"), "[n]o covered entity shall discriminate against a qualified individual on the basis of disability . . ." 42 U.S.C. § 12112(a). To establish a prima facie case of disability discrimination, "a plaintiff must show that they are disabled and qualified and that they suffered an adverse employment action because of their disability." *Jason v. Adobe, Inc.*, 2025 WL 72083, *3 (D. Or. Jan. 10, 2025) (citation and internal quotation marks omitted).

In the SAC, plaintiff alleges that (1) she has disabilities including ADHD and anxiety; (2) she performed the essential functions of her position remotely for more than four years without documented performance issues and her healthcare provider confirmed that she could perform her essential duties from her home; (3) Coast terminated her employment and explained in the termination email that it did not view her as a qualified individual and conditioned her employment on obtaining treatment for her disabilities; (4) Coast viewed her as an individual with impairments and made an adverse employment decision based on that perception; (5) a non-disabled coworker performing "substantially similar functions" worked remotely throughout the period and was not

Page 8 – ORDER AND OPINION

required to work in the office or subjected to an interactive process and was promoted twice; and (6) plaintiff suffered damages as a result of Coast's conduct. Sec. Am. Compl. ¶¶ 76-83 (doc. 18).

Defendants argue that plaintiff fails to establish that she is a qualified individual under the statute or to establish a causal connection between her disability and her termination, and, to the extent she alleges a disparate treatment theory, she does not allege facts sufficient to support that theory. Defs.' Mot. Dismiss 6-13 (doc. 19).

### i. Qualified Individual

To prevail on a discrimination claim, "a plaintiff must plead and prove that she held or desired a job and could perform its essential functions with or without reasonable accommodation, at the time of an employer's alleged act of disability-based discrimination." *Stanley v. City of Stanford*, 606 U.S. 46, 65 (2025). In determining whether someone is a qualified individual, courts give consideration "to the employer's judgement as to what functions of a job are essential[.]" 42 U.S.C. § 12111(8).

Defendants argue that plaintiff fails to allege that she can perform the essential functions of her position with or without reasonable accommodation, instead alleging only that she previously successfully performed her job remotely and that her healthcare provider had confirmed that plaintiff could perform all essential job duties from her home, which is insufficient. Defs.' Mot. Dismiss 7-11 (doc. 19); Defs.' Reply 3-5 (doc. 22). "[D]ismissal is appropriate when the plaintiff . . . fails to allege that the plaintiff could perform the essential functions of the job with or without accommodation." *Wessels v. Moore Excavation, Inc.*, 2014 WL 6750350, at *4 (D. Or. Dec. 1, 2014) (citation omitted).

A plaintiff may sufficiently plead she is a qualified individual under the ADA by alleging that "[she is] able to perform the essential functions of [her] position either with or without

Page 9 – ORDER AND OPINION

accommodation[,]" without pleading the alleged essential functions. *Id.* at *4-5. Plaintiff's pleading that she had previously performed the essential functions of her position remotely and that her healthcare provider had written that plaintiff could perform her essential duties from home do not amount to an allegation that plaintiff is able to perform the essential functions of her position with or without accommodation. As a result, plaintiff does not sufficiently allege that she is a qualified individual under 42 U.S.C. § 12111(8) and, as a result, she does not state a cognizable claim under 42 U.S.C. § 12112(a).

### ii. Causal Connection

Defendants also contend that plaintiff's allegations are insufficient to demonstrate that Coast would not have terminated her but for her disability. Defs.' Mot. Dismiss 11 (doc. 19). "ADA discrimination claims under Title I [of the ADA] must be evaluated under a but-for causation standard." *Murray v. Mayo Clinic*, 934 F.3d 1101, 1107 (9th Cir. 2019). The "'but-for' standard follows textbook tort law that an action is not regarded as a cause of an event if the particular event would have occurred without it." *Ornsby v. Sunbelt Rentals, Inc.*, 205 F. Supp. 3d 1204, 1212 (D. Or. Sept. 7, 2016) (citation and internal quotation marks omitted).

Plaintiff alleges that Coast terminated her and in doing so provided that it did not view her to be a qualified individual with a disability under the ADA and that there were no accommodations sufficient to permit her to continue working given her request to remain fully remote. Sec. Am. Compl. ¶¶ 79-80 & Ex. E (doc. 18). Plaintiff added that Coast "made an adverse employment decision based on [the] perception" that she had "impairments." Sec. Am. Compl. ¶ 81 (doc. 18). Plaintiff does not sufficiently allege how that is so. "Just saying so is not enough. A recitation of facts without plausible connection to [disability] is not cured by labels and conclusory statements about [disability] discrimination." *Austin v. Univ. of Or.*, 925 F.3d 1133, 1138 (9th Cir. 2019) (citing

*Twombly*, 550 U.S. at 556). The recitation of Coast's statements in the termination email does not make a plausible link connecting those statements and plaintiff's termination to plaintiff's disability, particularly where the SAC includes statements demonstrating that Coast was implementing a department-wide part-time return-to-office initiative. Sec. Am. Compl. Ex. J, O, W. (doc. 18).[5] Plaintiff does not sufficiently allege but-for causation and does not state a cognizable claim under 42 U.S.C. § 12112(a).

### iii. Disparate Treatment

Defendants argue further that, assuming plaintiff is alleging a disparate treatment theory of discrimination, she fails to properly plead disability discrimination under that theory. Defs.' Mot. Dismiss 11-13 (doc. 19).

Plaintiff alleges that her coworker Borger, is "a designer performing substantially similar functions" to plaintiff, "is allowed to work remotely from Vancouver, Washington," and does not have a disability. Sec. Am. Compl. ¶ 16 (doc. 18). "Despite being allowed to work remotely from out of state, Borger was never told that an in-office presence was an 'essential function[,]'" he was not required to relocate to Portland, was never subjected to an interactive process, and was promoted over plaintiff twice. *Id.* Plaintiff also alleges other Coast employees "worked remotely without restriction." *Id.* ¶ 17. Those employees include a product packaging engineer based in China, the digital design team who were "allowed to work remotely without the restrictions"

---

[5] "The Court may consider material or documents attached to or properly submitted as part of the complaint on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment." *Buell v. United States Dep't of State*, 2025 WL 1679478, at *1, n.2 (D. Or. Apr. 28, 2025) (citation and internal quotation marks omitted); see *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (court may treat an exhibit has "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)").

plaintiff faced, and additional "department employees allowed to work remotely without scrutiny." *Id.*

Regardless of whether Borger performed substantially similar functions as plaintiff—which is not clear given his different job title, the allegation that he was promoted over plaintiff twice, and the absence of any specific job duties or functions—plaintiff does not sufficiently allege that Borger was treated differently than plaintiff. Despite plaintiff's contention that the allegation that Borger "is allowed to work remotely," it is not clear whether he continued to work remotely on a full-time basis after Coast's statements return-to-office initiative, particularly given that he is alleged to live within driving distance of Coast's Portland office. The allegations regarding other coworkers are similarly lacking plaintiff does not address the job duties or functions of any other employee, addresses the location of only one additional coworker without saying whether that coworker spends any time in Coast's office, and entirely avoids whether those employees were required to return to office in some form following Coast's statements to plaintiff regarding the return-to-office initiative. Plaintiff does not sufficiently allege a disparate treatment theory of discrimination.

### b.  Failure to Accommodate Under 42 U.S.C. § 12112(b)(5)(A)

"The ADA treats the failure to provide a reasonable accommodation as an act of discrimination if the employee is a 'qualified individual,' the employer receives adequate notice, and a reasonable accommodation is available that would not have placed an undue hardship on the operation of the employer's business." *Snapp v. United Transp. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018) (quoting 42 U.S.C. § 12112(b)(5)(A)). The burden to demonstrate an undue hardship rests with the employer. 42 U.S.C. § 12112(b)(5)(A).

"[N]otifying an employer of a need for an accommodation triggers a duty to engage in an interactive process through which the employer and employee can come to understand the

Page 12 – ORDER AND OPINION

employee's abilities and limitations, and employer's needs for various positions, and a possible middle ground for accommodating the employee." *Snapp*, 889 F.3d at 1095 (citation omitted). The interactive process requires both parties to communicate and engage in good-faith exploration of possible accommodations without delay or obstruction. *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001) (citations omitted).

"An appropriate reasonable accommodation must be effective, in enabling the employee to perform the duties of the position. *Id.* (citation and internal quotations omitted). An employer's obligation is not to provide the employee with the accommodation that employee requests or prefers, but to provide some reasonable accommodation. *U.S. EEOC v. UPS Supply Chain Sols.*, 620 F.3d 1103, 1110-11 (9th Cir. 2010) (citations and internal quotation marks omitted). The employer has discretion in choosing between effective accommodations and "may choose the less expensive accommodation or the accommodation that is easier for it to provide." *Id.* at 1111 (citation and internal quotation marks omitted).

In the SAC, plaintiff pleads that the claim addresses "Coast's failure to provide a reasonable accommodation through a good faith interactive process." Sec. Am. Compl. ¶ 85 (doc. 18). Plaintiff alleges that she requested to continue her remote work arrangement as a reasonable accommodation; Coast received the completed medical inquiry form from plaintiff's healthcare provider; remote work was a reasonable accommodation, as plaintiff had previously performed all job functions; Coast supervisor Parker said Coast had been "getting by" with plaintiff working remotely, and other employees worked remotely; Coast did not evaluate her job functions as previously performed but instead against a new job description; plaintiff's healthcare provider recommended continued full-time remote work, which Coast disregarded; Coast proposed that plaintiff fly from Arkansas to Portland to work in the office 4 of every 10 business days; Coast did

not identify any specific tasks plaintiff failed to complete or any business loss caused by her remote status or explain why her work required her to be in-person; and plaintiff suffered damages as a result of Coast's failure to accommodate. *Id.* ¶¶ 86-92.

Defendants contend that, to the extent plaintiff's accommodation claim is distinct from her discrimination claim, "after discounting conclusory labels and legal conclusions," plaintiff alleges only that Coast denied her preferred accommodation while admitting that Coast engaged in the interactive process with her. Defs.' Mot. Dismiss 13-14 (doc. 19).

As an initial matter, plaintiff's failure to accommodate claim is insufficient because she does not adequately plead that she is a "qualified individual" who can perform the essential functions of her job with or without accommodation for purposes of her claim under 42 U.S.C. § 12112(b)(5)(A) for the same reasons she does not sufficiently allege that she is a qualified individual for her claim under 42 U.S.C. § 12112(a).

Further, plaintiff's allegations regarding the reasonableness of continued remote work from Arkansas are insufficient. That plaintiff had previously performed her job functions remotely is not sufficient given that Coast had updated the job description. Plaintiff's reliance on Parker's comment that Coast had been "getting by" with plaintiff working remotely is misguided. Parker's statement was:

> [Plaintiff], we've been 'getting by' having you remote but your inability to come into the office has caused inefficiencies and a lack of collaboration and in many instances work that is part of your project responsibility has to be delegated to others because they are in the office and able to get the work completed and this is in addition to their own job responsibilities.

Sec. Am. Compl. Ex. O (doc. 18). It is clear both from the use of quotation marks and the rest of the sentence that Parker was communicating that plaintiff's remote work was not sustainable. That other employees worked remotely is also insufficient given that plaintiff does not allege that those employees' essential functions were substantially similar to hers, that they were remote full time,

Page 14 – ORDER AND OPINION

or that they were not required to return as part of the return-to-office initiative Coast described to plaintiff. Additionally, plaintiff's healthcare provider's evaluation does not establish that continued full-time remote work was a reasonable accommodation because the healthcare provider only stated that plaintiff would be able to perform all essential duties from her Arkansas home, which is a conclusory statement difficult to understand given that the "[a]bility to work personally in office for meetings, photo shoots, and product troubleshooting" was some of plaintiff's essential job functions. Sec. Am. Compl. Ex. D (doc. 18).

Moreover, plaintiff does not sufficiently allege that Coast failed to engage in a good faith interactive process. Plaintiff's claim is not that Coast failed to engage in an interactive process, but that it failed to do so in good faith. Pl.'s Resp. Mot. Dismiss 11, 25 (doc. 21). In support of that assertion, plaintiff challenged the legitimacy of the updated job description, alleged that Coast ignored plaintiff's healthcare provider's recommendation, challenged Coast's proposed alternative accommodation as out of line with her healthcare provider's recommendation, and alleged that Coast did not identify issues with her remote work, document business loss caused by her remote work, or explain why her work was required to be in-person. Sec. Am. Compl. ¶¶ 88-91 (doc. 18).

It is not clear how Coast's reassessment of plaintiff's essential job functions would show bad faith in the interactive process. Additionally, plaintiff's healthcare provider did not recommend continued full-time remote work but merely stated that plaintiff could perform her functions from home and explained why that environment would be good for plaintiff. Sec. Am. Compl. Ex. D (doc. 18). Further, Coast identified a need for an in-office presence in her role before any disclosure of a need for related accommodation. Sec. Am. Compl. Ex. W (doc. 18) (listing issues with full-time remote work as well as reasons to have art directors in the office). Plaintiff does not state a cognizable claim for failure to accommodate under 42 U.S.C. § 12112(b)(5)(A).

Page 15 – ORDER AND OPINION

### c. Retaliation Under 42 U.S.C. § 12203(a)

Under 42 U.S.C. § 12203(a), an employer may not "discriminate against any individual because such individual has opposed any act or practice made unlawful by" the ADA. To state a prima facie case of retaliation under the ADA, a plaintiff "must show that (1) [she] was engaged in a protected activity; (2) the [defendants] took an adverse action against [her]; and (3) a 'causal link' exists between the protected activity and the adverse action." *Goekjian v. City of Portland*, 2025 WL 4670414, *5 (D. Or. Dec. 16, 2025) (citing *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015)).

Defendants argue that plaintiff does not and cannot adequately plead her retaliation claim because she does not sufficiently allege that she exhausted all required administrative remedies and that, if even if she did exhaust all required administrative remedies, she fails to adequately allege causation. Defs.' Mot. Dismiss 19-26 (doc. 19).

### i. Exhaustion

To state a claim for relief under the ADA, a plaintiff must first exhaust administrative remedies with the EEOC. *Thompson v. City of Tualatin*, 2022 WL 742682, at *2 (D. Or. Mar. 11, 2022) (citations omitted). Here, plaintiff alleges that she "checked three separate retaliation categories" in an initial inquiry form with the EEOC. Sec. Am. Compl. ¶ 7 (doc. 18). Those categories were "I filed a charge of job discrimination," I contacted a government agency to complain about job discrimination," and "I complained to my employer about job discrimination." *Id.* In her retaliation claim, plaintiff alleged that the "EEOC charge encompassed retaliation. The EEOC Inquiry Information form documents three separately checked retaliation categories and a narrative describing discrimination and retaliation persisting from April 25, 2024, to the filing date." *Id.* ¶ 95. Plaintiff included in the SAC only the initial inquiry form and portions of Coast's position statement responding to her EEOC charge. *Id.* Exs. F, R. (doc. 18).

Page 16 – ORDER AND OPINION

"[T]he inquiry into whether a claim has been sufficiently exhausted must focus on the factual allegations made in the charge itself[.]" *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 637 (9th Cir. 2002) (citation omitted). Plaintiff does not allege in the SAC that the EEOC charge alleged facts such that the EEOC would have investigated retaliation. In the absence of allegations of fact regarding what was included in the charge, plaintiff does not sufficiently allege that she exhausted the required administrative remedies for her claim of retaliation under 42 U.S.C. § 12203(a).

### ii. Causation

Even if plaintiff had adequately pleaded that she exhausted the required administrative remedies, she did not state a cognizable claim for retaliation under the ADA because she did not adequately plead causation. "[B]ut-for causation is the standard applied to ADA retaliation claims." *Easton v. Shulkin*, 2019 WL 2870087, at *2 (D. Or. July 3, 2019) (citation omitted).

Plaintiff alleges in the SAC that the causal connections between the alleged protected activities and the alleged adverse actions include (1) the "characterization of protected EEOC activity" as "extortion," (2) Coast terminated plaintiff six days after she said she would proceed with the EEOC, (3) "the escalating pattern of adverse actions tracking each protected activity," and (4) Coast's "submission of a fabricated document" to Coast's disability insurance carrier and the EEOC after her termination. Sec. Am. Compl. ¶ 109 (doc. 18). Plaintiff does not adequately allege what protected activity was causally connected to those alleged adverse actions or allege facts sufficient to permit the inference that those actions would not have been taken but for plaintiff's protected activity.

Plaintiff relies on temporal proximity between some of her alleged protected activity and Coast's alleged adverse actions. Temporal proximity can be enough on its own to state a claim for

Page 17 – ORDER AND OPINION

retaliation but that is not so where a complaint alleges facts that make the inference implausible. *Gage v. Mayo Clinic*, 2025 WL 1733503, at \*2 (9th Cir. 2025). Here, plaintiff makes three allegations to establish causation based on temporal proximity: (1) Coast's relocation demand came two days after plaintiff's ADHD disclosure and request for email communications, (2) plaintiff was isolated in the workplace the day after she "communicated with coworkers about their workplace rights," and (3) plaintiff was terminated six days after she informed Coast that she would proceed with the EEOC process. Sec. Am. Compl. ¶¶ 98, 101, 106 (doc. 18). Plaintiff's allegations and exhibits make the inference of causation based on temporal proximity alone implausible.

Allegations in the SAC show that Coast requested plaintiff return to the office part time following her initial disclosure and request that communications be in writing but prior to any additional request for accommodation by plaintiff. *Id.* ¶¶ 20-23. Further, plaintiff includes in the SAC an exhibit with an unrebutted description of a department-wide return-to-office initiative. Sec. Am. Compl. Ex. O (doc. 18).

Plaintiff's workplace isolation allegation is similar. Plaintiff alleges that the day after she "communicated with coworkers about their workplace rights" Parker emailed the department, except for plaintiff, apologizing for plaintiff's communications; Dailey simultaneously directed plaintiff to stop communicating with coworkers about personnel issues; and plaintiff's supervisor stopped assigning her new work or attending one-on-one meetings while no member of the marketing team communicated with plaintiff about work assignments for the remainder of her employment. Sec. Am. Compl. ¶ 101 (doc. 18). Plaintiff's exhibits make clear that Dailey asked plaintiff to communicate with Dailey directly, rather than plaintiff communicating with the entire management team regarding personnel issues because Dailey was addressing those issues. Sec.

Page 18 – ORDER AND OPINION

Am. Compl. Ex. S (doc. 18). Plaintiff's exhibits also show that Dailey told plaintiff she was "welcome to discuss [her] rights with [her] colleagues at any point, and that plaintiff's supervisor asked to be removed from the personnel emails to "focus on the day-to-day management of [plaintiff's] projects/tasks[.]" *Id.* Regarding plaintiff's claim of "isolation as a result of her supervisor not assigning her new work or meeting with her" that resulted in her marketing team coworkers "no longer communicating with her about work assignments," plaintiff does not allege that Coast ever directed or specified how her peers were to communicate with her. Further, Dailey never mentions plaintiff's coworkers (doc. 18).

As for plaintiff's allegation that she was terminated six days after informing Coast that she intended to pursue relief through the EEOC, the SAC includes allegations and exhibits showing that Coast engaged in an interactive process with plaintiff, culminating in a determination that plaintiff was not a qualified individual under the ADA. Sec. Am. Compl. ¶ 25, 39, 43(d), 51, 57 & Exs. E, J, L, O, Q, S (doc. 18). In light of those allegations and exhibits, temporal proximity alone is not enough to sustain an inference that but for plaintiff's utilization of the EEOC process Coast would not have terminated her employment. Plaintiff does not allege facts sufficient to support causation, and thus fails to state a cognizable claim for retaliation under 42 U.S.C. § 12203(a).

d. **Interference with ADA Rights Under** 42 U.S.C. § 12203(b)

It is unlawful under the ADA "to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected" by the ADA. 42 U.S.C. § 12203(b). While "[t]he Ninth Circuit has not specifically described the elements required to establish a violation of § 12203(b)," it has held that a plaintiff states a claim under that statute by alleging facts showing

Page 19 – ORDER AND OPINION

that (1) her employer threatened her with an adverse action; (2) the threat had a nexus to her exercise or enjoyment of an ADA right; and (3) she suffered 'distinct and palpable' injury as a result of the threat." *Armstrong v. Newsom*, 484 F. Supp. 3d 808, 844-45 (N.D. Cal. Sep. 8, 2020) (citing *Brown v. City of Tucson*, 336 F.3d 1181, 1191-93 (9th Cir. 2003)).

Plaintiff does not adequately plead a "distinct and palpable" injury. "That injury could consist of either the giving up of her ADA rights, or some other injury which resulted from her refusal to give up her rights, or from the threat itself." *Brown*, 336 F.3d at 1193. Plaintiff alleges nothing of the sort, instead alleging only that she "suffered lost wages, lost benefits, emotional distress, and other damages as a direct result of Coast's interference." Sec. Am. Compl. ¶ 124 (doc. 18). Therefore, plaintiff does not state a cognizable claim for interference with ADA rights under § 12203(b).

### e.  Oregon Claims

Defendants argue that Oregon law does not apply to plaintiff's claims and, even if it did, she fails to state facts sufficient to support claims for relief under Oregon law. Defs.' Mot. Dismiss 28-35 (doc. 19). Because Oregon's employment discrimination laws are not available to plaintiff, the Court does not address whether those claims are otherwise substantively sufficient.

### Applicability of Oregon Law

Plaintiff alleges that at all relevant times she resided in Arkansas, was registered as an employee in Arkansas, completed all of her work in Arkansas, and was not physically present in Oregon. Sec. Am. Compl. ¶¶ 3, 14-15, 75 (doc. 18).

Oregon law applies to "[a]ctions between an employer and an employee who is primarily employed in Oregon that arise out of an injury that occurs in Oregon." Or. Rev. Stat. § 15.430(6). While Or. Rev. Stat. § 15.440(3)(c) generally determines whether Oregon law applies to non-contractual claims where "the injurious conduct occurred in one state and the resulting injury in

Page 20 – ORDER AND OPINION

another state," neither that statute nor Or. Rev. Stat. § 15.445 is applicable here. *See* Or. Rev. Stat. § 15.405 ("ORS 15.400 to 15.460 do not supersede the provisions of other Oregon statutes that expressly designate the law governing a particular noncontractual claim."). "[T]he Oregon state statute prohibiting discrimination only applies to individuals residing and/or working in the State of Oregon." *Person v. Bank of Am., N.A.*, 2013 WL 3353773, at *4 (D. Or. June 28, 2013); *see also* Or. Rev. Stat. § 659A.006(1) (prohibiting unlawful discrimination against any inhabitants of the state of Oregon); Or. Rev. Stat. § 659A.001(4) (defining "employers" subject to the statute as those engaging the service of employees "in this state."); *Grove City Veterinary Serv. LLC v. Charter Practices Int'l LLC*, 2014 WL 3371918, at *7 (D. Or. July 9, 2014) (explaining that plaintiff, an out-of-state resident employed out-of-state by an Oregon employer, could state a claim under ORS 659A only if she alleged physical discriminatory acts took place while she was in Oregon.).

Because plaintiff cannot properly state a claim under Oregon's employment discrimination laws, claims V, VI, VII, VIII, and IX are dismissed with prejudice.

### f.   Disability Discrimination Under Ark Code § 16-123-107

To establish a prima facie case of disability discrimination under the Arkansas Civil Rights Act (the "ACRA"), a plaintiff must allege the same elements as for a disability discrimination claim under the ADA. *Givens v. El Dorado Festivals & Events, Inc.*, 2019 WL 4417483, at *2 (W.D. Ark. Sept. 16, 2019). That is, the plaintiff must show she has a disability within the meaning of the ADA, is qualified to perform her job's essential functions with or without reasonable accommodation and has suffered an adverse employment action due to her disability. *Id.* Therefore, plaintiff has not sufficiently pleaded a claim under the Arkansas statute because she has not sufficiently alleged that she is a qualified individual or that her disability was the but-for cause of the adverse employment action.

Page 21 – ORDER AND OPINION

Even assuming plaintiff could adequately plead a disability discrimination claim under Arkansas law, "an action for discrimination under the ACRA must be brought within one year after the alleged employment discrimination occurred or within ninety days of receipt of a right to sue letter or a notice of determination from the EEOC." *Lewis v. Twin Rivers Pine Bluff, LLC*, 2026 Ark App. 140, at *12, 7321 S.W.3d 443 (2026) (citation omitted). Plaintiff's claim was brought outside of that time period.

However, relation back is permitted where "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]" Fed. R. Civ. P. 15(c)(1)(B). Plaintiff does not advance any argument for relation back in the SAC. Should plaintiff again attempt to plead disability discrimination under Arkansas law, the complaint must allege that "[d]efendants were provided notice of the complaint and were not prejudiced by the amendment." *Smillie v. County of Maricopa*, 646 Fed. Appx. 570, 571 (9th Cir. 2016) (citation omitted).

### g. Prejudicial Dismissal

Defendants request that the Court dismiss plaintiff's SAC and all claims with prejudice on the grounds that amendment would be futile. Defs.' Mot. Dismiss 1-2 (doc. 19). While plaintiff has twice amended her complaint, this is the first time the Court has addressed in detail the substance of her claims. Despite the SAC's deficiencies, the Court finds that prejudicial dismissal is not appropriate as to plaintiff's federal claims (Counts I, II, III, and IV) or plaintiff's claim under the Arkansas disability discrimination law (Count X). Prejudicial dismissal is appropriate as to plaintiff's Oregon law claims (Counts V, VI, VII, VIII, and IX), as plaintiff cannot prove a set of facts entitling her to relief under Oregon's employment discrimination laws.

### CONCLUSION

For the foregoing reasons, defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6) (doc. 19) is granted.  Plaintiff has thirty days to file a third amended complaint.

IT IS SO ORDERED.

DATED this 6th day of July, 2026.


_____/s/ Jolie A. Russo_____
Jolie A. Russo
United States Magistrate Judge