UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

PETRA NOVAL, an individual,

Plaintiff,

v.

COAST CUTLERY CO. INC., d/b/a COAST PRODUCTS, INC, an Oregon corporation,

Defendant.

3:25-cv-01708-JR

OPINION AND ORDER

Russo, Magistrate Judge:

Plaintiff Petra Noval ("plaintiff") brings this action against defendant Coast Cutlery Co. ("defendant" or "Coast"). Plaintiff asserts claims for disability discrimination, failure to accommodate, and retaliation stemming from her employment with and subsequent dismissal from Coast. Defendant now moves to dismiss plaintiff's Third Amended Complaint with prejudice under Fed. R. Civ. P. 12(b)(6). For the reasons stated below, defendant's motion is granted and this case is dismissed.

## BACKGROUND

The facts related here are taken from plaintiff's Third Amended Complaint ("TAC") and accompanying exhibits[1] (doc. 24). Plaintiff is an individual residing in Huntsville, Arkansas. TAC ¶ 11. Defendant is an Oregon corporation that employed plaintiff between February 25, 2019, until August 20, 2024. TAC ¶¶ 11-12.

Plaintiff worked on-site in Coast's Portland headquarters from February 2019 until the COVID-19 pandemic began in March 2020, at which point plaintiff and other employees transitioned to full-time remote work. TAC ¶ 24. In August 2021, plaintiff requested and was approved to work remotely from Texas on a permanent basis. TAC ¶ 25. In July 2022, plaintiff notified Coast that she had moved from Texas to Arkansas. TAC ¶ 26.

On May 8, 2024, plaintiff emailed her boss to request an increase in compensation. Ex. 67, pp. 220-21. On May 9, 2024, plaintiff emailed requesting that her annual review be prioritized, stating that a "prolonged delay of nearly three months" causes "considerable emotional strain, making it difficult [] to maintain focus on [] work responsibilities." Ex. 67, p. 224. Plaintiff requested paid time off ("PTO") from May 10 until May 24. TAC ¶¶ 36-37. According to plaintiff, the leave was "medical in purpose" due to her anxiety for not having received her annual review. TAC ¶ 37. Plaintiff wrote on the PTO request form that she would take PTO "until the review can be completed." TAC ¶ 37. Two days after plaintiff's PTO ended, a tornado hit her town of residence, and plaintiff took an additional week off to deal with the aftermath. TAC ¶ 37.

---

[1] Plaintiff attached 74 Exhibits to her TAC. The Court treats these Exhibits as part of the complaint and assumes their contents to be true for the purposes of defendant's Motion to Dismiss. S*ee United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). As the Exhibits are attached to the complaint as a single document, the Court cites both the exhibit number and page number of the overall document.

Coast emailed plaintiff on May 21, 2024, and proposed a date for a phone call to discuss her performance review. TAC ¶ 39. On May 22, 2024, plaintiff emailed her supervisors, Joe Parker ("Parker") and Zach Zarosinski ("Zarosinski"), "formally" disclosed her ADHD[2] and requested that future discussions regarding her employment take place in writing as an accommodation for her ADHD. TAC ¶ 39. According to plaintiff, she disclosed her ADHD diagnosis to Zarosinski in 2019 but did not request an accommodation until May 2024, despite her condition "significantly impacting her auditory processing abilities, especially during heightened times of stress." TAC ¶ 39. Parker replied that Coast would accommodate her request and provide a written response regarding plaintiff's employment within the next few days. TAC ¶ 40.

On May 24, 2024, Parker emailed plaintiff stating, "I understand that you would rather we communicate with you in writing" and explained that "for this relationship to work out, [Coast] would like to have [plaintiff] back in Portland" two or three days a week. TAC ¶ 42. Parker stated that, due to plaintiff's remote status, tasks she was responsible for were often performed by others. Ex. 11, p. 97. Parker added that Coast's project timelines had condensed, and having to "rely on others to provide that sort of work on projects they are not directly responsible for" was no longer feasible. Ex. 11, p. 97. On June 3, 2024, plaintiff requested to continue working remotely from her Arkansas home as an accommodation for ADHD and anxiety. TAC ¶ 52. On June 6, 2024, Parker responded that Coast was willing to consider a hybrid work arrangement, as reasonable accommodation. Ex. 13, p. 104. However, Coast had been "getting by" with plaintiff working remotely, and her "inability to come into the office [had] caused inefficiencies." TAC ¶ 56. Parker related that a hybrid working arrangement was an option even if she did not have a disability, and asked plaintiff to confirm whether she was willing to relocate to Portland by June 15, 2024. Ex.

[2] Attention Deficit Hyperactivity Disorder.

13, p. 104. Parker attached to his email an art director job description plaintiff had not seen, a medical inquiry form, and an FMLA certification form. TAC ¶58; Ex. 13, p. 105. The updated job description included an essential job functions section that included the "[a]bility to work personally in office for meetings, photo shoots, and product troubleshooting" and a desired attributes section that listed "a high level of emotional intelligence, including empathy, self-awareness, and the ability to manage one's own emotions as well as understand and influence the emotions of others." TAC ¶¶ 58-59; Ex. 5, pp. 87-89.

On June 7, 2024, plaintiff emailed Zarosinski that she planned to "file a formal complaint about the discrimination and retaliation" against Parker. Ex. 18, p. 119. That same day, plaintiff emailed her coworkers accusing Parker of discrimination and retaliation for requesting accommodations for her disability. Ex. 62, p. 190. Parker later emailed the marketing department, except plaintiff, apologizing "for the emails and possibly phone calls some or all of you have been getting from [plaintiff]." TAC ¶ 190; Ex 63, p. 191. Plaintiff then filed a formal complaint against Parker, and Coast hired an independent investigator to investigate those claims. Ex. 22, p. 124.

On June 20, 2024, plaintiff emailed Coast to request the following accommodations: (1) permanent remote work from her home in Arkansas; (2) flexible scheduling to allow for necessary breaks and symptom management throughout the day; (3) clear, written communication about job expectations, deadlines, performance metrics and salary increases; (4) regular employee evaluations and check-ins; (5) continued use of digital communication tools for meetings and collaboration. Ex. 23, p. 126. On July 9, 2024, Coast emailed plaintiff regarding the interactive process around her accommodations request. Ex. 30, pp. 138-39. The parties continued to engage in the interactive process regarding possible reasonable accommodations that plaintiff might be willing to accept. On July 31, 2024, plaintiff rejected Coast's proposed hybrid work agreement

and brought up the subject of possible severance. Ex. 44, p. 168. Coast provided plaintiff with its standard severance agreement. Ex. 46, pp. 171-72. Plaintiff replied "Thank you for the severance information. This offer will be documented as evidence of Coast's acknowledgment of wrongdoing." Ex. 47, p. 173.

On August 2, 2024, plaintiff emailed Coast that she was taking steps to file an EEOC complaint. Plaintiff stated that if "a finalized and mutually agreed upon severance package" was not reached by August 15, 2024, she would "have no choice but to continue with the EEOC process as scheduled." Ex. 48, p. 174. Coast responded that it remained willing to engage in the interactive process, but if plaintiff preferred to negotiate a severance package, then she should submit a demand letter by August 8, 2024. Ex. 49, p. 175.

On August 14, 2024, plaintiff informed Coast that she intended to proceed with the EEOC intake process. Ex. 52, p. 178. Plaintiff asked for a clear response if Coast approved or denied her request to work permanently from her home in Arkansas. Ex. 52, p. 178. The next day, Coast replied that plaintiff's request was not a reasonable accommodation and was therefore denied. Ex. 53, p. 179. Plaintiff acknowledged receipt of the accommodation denial, indicating she had no other suggestions, and asked where the parties went from there regarding her employment. Ex. 54, p. 180. On August 20, Coast sent plaintiff an email terminating her employment effective that day. Ex. 55, 181-82.

Plaintiff filed a charge of discrimination with the EEOC on September 5, 2024. Ex. 1, 77-79. Coast filed its response on November 7, 2024. Ex. 65, pp. 195-211. The EEOC issued a determination and notice of rights on July 31, 2025, dismissing the charge and issuing plaintiff's right to sue. Ex. 2, pp. 80-81.

Plaintiff filed her complaint with this Court on September 9, 2025 (doc. 1). The complaint was dismissed and plaintiff filed an amended complaint on March 25, 2026 (doc. 18). That complaint was also dismissed, and plaintiff filed her third amended complaint on August 3, 2026. (doc. 24). Defendant now moves to dismiss plaintiff's third amended complaint (doc. 24).

**STANDARD OF REVIEW**

When the plaintiff fails "to state a claim upon which relief can be granted[,]" the court must dismiss the action. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For the purposes for the motion to dismiss, the complaint is liberally construed in favor of the plaintiff, and its allegations are taken as true. *Rosen v. Walters*, 719 F.2d 1422, 1424 (9th Cir. 1983). Regardless, bare assertions that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Ashcroft v. Iqbal*, 556 U.S. 662, 680–81 (2009). Rather, to state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. *See, e.g., Haines v. Kerner*, 404 U.S. 519, 520 (1972). The court, in many circumstances, instructs the pro se litigant regarding deficiencies in the complaint and grants leave to amend. *Eldridge v. Block*, 832 F.2d 1132, 1136 (9th Cir. 1987). Nevertheless, a pro se plaintiff's claims may be dismissed without leave to amend where it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him or her to relief. *Barrett v. Belleque*, 544 F.3d 1060, 1061-62 (9th Cir. 2008).

## DISCUSSION

Defendant argues that plaintiff's complaint should be dismissed because the complaint violates the pleading standards of Rule 8. Defendant also argues that dismissal is appropriate because plaintiff cannot show she is a qualified individual under the ADA, and even if she could make such a showing, she cannot plead sufficient facts to state a claim under the ADA.

### I. Pleading Standards Under Rule 8(a)

Rule 8 requires that every pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). The pleading standards under Rule 8 promote judicial efficiency so that "parties and the court can 'focus litigation on the merits of a claim.'" *Gibson v. City of Portland*, 165 F.4th 1265, 1287 (9th Cir. 2026) (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002)). To that end, a district court "should not be forced to wade through a morass of allegations, trying to determine how the facts might relate to the causes of action." *Id.* at 1290.

The Court agrees that plaintiff's TAC fails to meet the pleading standards of Rule 8. Plaintiff's complaint is 76 pages long stretching to 269 pages long with accompanying exhibits. Moreover, although plaintiff alleges only three claims, each claim "incorporates all preceding paragraphs," without regard for what each preceding paragraph discussed or how those paragraphs relate to each claim. *See, e.g.*, TAC ¶¶ 168, 180, 189. This, coupled with the sheer volume of information packed into each paragraph, makes the complaint unwieldly and difficult to analyze.

Plaintiff's TAC is also replete with vague and internally contradictory statements, as well as immaterial facts that are not obviously connected to any particular cause of action. For example, a single paragraph under a section titled "February—May 2024: the overdue annual review—an

accommodation need her provider would later document—and the anxiety it produced," provides a lengthy and confusing narrative that does not appear directly related to her claims under the ADA:

> [t]he leave ran from May 10 through May 24, 2024, without objection from anyone at Coast. Parker had suggested it and accepted it in writing before the form existed. The leave was medical in purpose: Plaintiff took it to stabilize her anxiety through rest and treatment, and on May 31, 2024—days after it ended—her healthcare provider prescribed buspirone to manage her anxiety symptoms. (Ex. 68.) Two days after the leave ended, on May 26, 2024, an EF-3 tornado struck Plaintiff's area, and Plaintiff took the following week, May 27-31, for the aftermath. The treatment helped: Plaintiff returned to her assigned projects the week of June 3, 2024—as her own supervisor's June 6 email confirms (Section V.M.). Coast's EEOC Position Statement later avers that the May 10-24 leave "was related to a severe weather event in Arkansas." (Ex. 65 p.10.) The leave request is dated May 9, 2024, and states its purpose on its face: PTO "until the review can be completed." The tornado came seventeen days after the request, and two days after the leave ended—the actual weather week was a different, later week. One page after the weather account, the same Position Statement give the leave a second, different cause: "PTO for her disability." (Ex. 65 pp. 10-11; Ex. 67.)

TAC ¶ 37. This paragraph is one example of many where the complaint is simply too jumbled and verbose to meet the "short plain statement" pleading requirements under Rule 8. *See* Fed. R. Civ. P. 8(a).

The failure to adhere to the pleading standards under Rule 8 is alone grounds for dismissing plaintiff's complaint. However, the complaint contains additional defects that warrant granting defendant's motion to dismiss with prejudice.

## II. Disability Discrimination Under 42 U.S.C. § 12112(a)

Under the Americans with Disabilities Act ("ADA" or "Act"), "[n]o covered entity shall discriminate against a qualified individual on the basis of disability . . ." 42 U.S.C. § 12112(a). To establish a prima facie case of disability discrimination, "a plaintiff must show that they are disabled and qualified and that they 'suffered an adverse employment action because of their disability.'" *Jason v. Adobe, Inc.*, No. 3:23-CV-01432-AN, 2025 WL 72083, at *3 (D. Or. Jan. 10,

2025) (quoting *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001)) (citation modified).

**A. Plaintiff is Not a Qualified Individual Within the Meaning of the ADA**

The crux of defendant's argument is that plaintiff has not—and cannot—plead sufficient facts to state a prima facie claim under the ADA because she cannot show that she is a qualified individual. The Court agrees that plaintiff is not a qualified individual within the meaning of the Act.

It is axiomatic that "[o]nly a qualified individual with a disability may state a claim for discrimination." *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1480 (9th Cir. 1996). Under the ADA, a "qualified individual" is someone who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). It is the plaintiff's burden to show that she is a qualified individual within the meaning of the Act. *Lucero v. Hart*, 915 F.2d 1367, 1371 (9th Cir. 1990). And a plaintiff must establish that she was a qualified individual "at the time of an employer's alleged act of disability-based discrimination." *Stanley v. City of Sandford, Florida*, 606 U.S. 46, 65 (2025).

Defendant explained to plaintiff that changes to the business's needs made an in-office presence an essential function of the job. Ex. 11, pp. 97-98. Defendant communicated that it could no longer support the fully remote work option plaintiff had operated under since the COVID lockdown. TAC ¶ 46; Ex. 11, pp. 97-98. And defendant communicated that in-office work was an essential function of her job before plaintiff requested to work from home as an accommodation

for her disability. Ex. 12, pp. 99-101. Plaintiff therefore knew that working in-office was an essential function of her job before her request for an accommodation.[3]

Plaintiff's argument that she is a qualified individual rests largely on her claim that she performed her job "with or without accommodation" prior to her termination. TAC ¶ 171. But, as this Court explained in its prior Order, merely stating that she has done the job in the past is not sufficient to establish that she can perform the essential functions of the position. *See* July 6, 2026, Order 9-10 (doc. 23). Moreover, a plaintiff cannot be a qualified individual under the ADA if she rejects an employer's reasonable offer of accommodation. 29 C.F.R. § 1630.9(d); *Hagan v. State of Or., Dep't of Hum. Res., Vocational Rehab. Div.*, 113 F.3d 1241 (9th Cir. 1997) (an employer has discretion to pick "between effective accommodations."). Plaintiff's exhibits show that she rejected any accommodation that was not her preferred accommodation. In fact, the complaint makes clear that there was only one accommodation that plaintiff was willing to accept: fully remote work from her home in Arkansas. Exs. 44, p. 168; 52, p. 178; 54 p. 180. She cannot therefore now claim that she is a qualified individual. *See* 29 C.F.R. § 1630.9(d); *Toye v. United Airlines, Inc.*, 172 F.3d 59 (9th Cir. 1999) (affirming that a plaintiff cannot be a qualified individual under the ADA after rejecting reasonable accommodations offered by employer). Because she cannot show that she is a qualified individual, plaintiff cannot state a prima facie claim under the ADA.

---

[3] Plaintiff takes issue with a revised job description defendant submitted to the EEOC including the in-office work time as an essential function. TAC ¶ 177. Plaintiff implies that the job description was changed based on her request for accommodations. However, plaintiff's main point of contention with the updated job description is the requirement for in-office work and that requirement was communicated to plaintiff before she requested to work from home as an accommodation.

### B. Plaintiff Fails to Establish a Causal Connection

Plaintiff's TAC also fails to allege any facts that could provide a causal connection between her disability and the adverse actions she alleges. *See Murray v. Mayo Clinic*, 934 F.3d 1101, 1107 (9th Cir. 2019) ("ADA discrimination claims . . . must be evaluated under a but-for causation standard."). Plaintiff alleges that she was fired due to her disability, and that she was subjected to additional adverse employment actions, including a "relocation ultimatum," a denial of accommodation, and pay and insurance disruptions. TAC ¶ 172. Plaintiff attempts to show causation through a series of email exchanges, none of which plausibly link her disability to the alleged adverse actions she claims.

First, plaintiff fails to connect her firing to her disability. Plaintiff alleges the email terminating her employment shows defendant's "stated reasoning for termination named Plaintiff's disability, her treatment and her accommodation request." Ex. 55, pp. 181-82. But that email states that defendant terminated plaintiff's employment following a breakdown of the interactive process, not because of plaintiff's disability:

> If there are no accommodations, including a leave of absence to get treatment for your Anxiety and ADHD, such that you could work at least some days every month in Portland while still residing in Arkansas, and since you have offered no other accommodations that will allow you to perform the essential functions of your job, with our without reasonable accommodations, then COAST does not see that you are a qualified individual with a disability under the ADA. Further, the interactive process has broken. COAST does not currently have any other positions available at your pay scale that we can offer you to work remotely from Arkansas.
>
> As we have not been able to identify a reasonable accommodation that will enable you to perform the essential functions of your position as an Art Director for COAST, we will process your separation from employment effective today.

Ex. 55, pp. 181-82. That defendant mentioned plaintiff's disability in connection with the breakdown of the interactive process does not create a causal link between her disability and her termination. But the termination email does show that communication between plaintiff and

defendant had deteriorated to the point where both parties considered the interactive process broken, a point plaintiff raised to defendant several times prior to her termination. *See, e.g.*, Exs. 40, p. 157-58; 44, p. 168; 53, p. 179; 54, p. 180; 60, p. 187.

Plaintiff also attempts to show causation based on the timing of her disability disclosure. Plaintiff's exhibits show that she formally disclosed her disability two days before the purported "relocation demand." TAC ¶ 174. But the fact that defendant brought up the company's return to in-office work in the email after plaintiff disclosed her disability does not amount to causation. When reviewed in context, the facts in the complaint that plaintiff relies on make causation implausible because defendant made the relocation request prior to plaintiff's request to work from home as an accommodation.[4] *Gage v. Mayo Clinic*, No. 23-4410, 2025 WL 1733503, at *2 (9th Cir. June 23, 2025) (temporal proximity does not give rise to an inference of causation where the facts alleged in the complaint make that inference implausible). Moreover, as the emails state, defendant's requirement for in-office work would apply even if plaintiff did not have a disability, meaning that her disability was not a motivating factor in the request.

None of plaintiff's other arguments as to causation fare better. As already discussed, plaintiff has not plausibly alleged that she was denied reasonable accommodation due to her disability. The facts in the complaint show that plaintiff's *preferred* accommodation was denied because it did not allow her to perform the essential functions of her job. Ex. 53, p. 179. Plaintiff had no other suggestions for accommodation after her preferred option was denied. Ex. 54, p. 180.

---

[4] The emails provided by plaintiff show that employee reviews were late that year. Plaintiff was upset by the delay and took PTO "until the review can be completed." TAC ¶ 37. Defendant escalated conversations around plaintiff's review at her request. Not until after defendant attempted to schedule a phone call to discuss plaintiff's concerns did plaintiff disclose her disability and request that all communication around topics of her employment be communicated in writing as an accommodation for her disability. Exs. 10-11, pp. 94-98; 67, p. 224.

Nor does plaintiff plausibly allege that "pay and insurance disruptions" had any causal connection to her disability. At best, plaintiff's allegations are temporal in nature. However, when reviewed against the facts in the complaint, plaintiff's temporal allegations are equally implausible.[5] Nothing in the record reflects that errors with her pay or insurance were caused by any animus due to her disability.

### III. Failure to Accommodate

"The ADA treats the failure to provide a reasonable accommodation as an act of discrimination if the employee is a 'qualified individual,' the employer receives adequate notice, and a reasonable accommodation is available that would not place an undue hardship on the operation of the employer's business." *Snapp v. United Transp. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018) (quoting 42 U.S.C. § 12112(b)(5)(A)). The burden to demonstrate an undue hardship rests with the employer. 42 U.S.C. § 12112(b)(5)(A).

"[N]otifying an employer of a need for an accommodation triggers a duty to engage in an interactive process through which the employer and employee can come to understand the employee's abilities and limitations, the employer's needs for various positions, and a possible middle ground for accommodating the employee." *Snapp, 889 F.3d at 1095* (citation omitted). The

[5] Plaintiff also makes a brief argument under a theory of disparate treatment but provides no facts that similarly situated individuals were treated more favorably that could give rise to an inference of discrimination. *Nicholson v. Hyannis Air Svc., Inc.*, 580 F.3d 1116, 1123 (9th Cir. 2009). Plaintiff's complaint shows that no other employees were similarly situated – she was the only employee who did not live within commuting distance. TAC ¶ 75. Her argument that the relocation and in-office mandate was not enforced against a colleague located in Beaverton, Oregon, "minutes from Coast's Portland office" fails for the same reason - a colleague within commuting distance is not similarly situated to one that is not. TAC ¶ 178. It is common sense that an employee residing minutes from the office would not be subject to a relocation mandate. She also argues that defendant's China-based Director of Manufacturing was not forced to relocate, but again, plaintiff fails to establish that a China-based Director of Manufacturing is a similarly situated individual. The difference between the individual titles makes it clear that they are not.

interactive process requires both parties to communicate and engage in good-faith exploration of possible accommodations without delay or obstruction. *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001) (citations omitted).

"An appropriate reasonable accommodation must be effective, in enabling the employee to perform the duties of the position." *Id.* (citation and internal quotations omitted). An employer's obligation is not to provide the employee with the accommodation that employee requests or prefers, but to "provide some reasonable accommodation." *U.S. EEOC v. UPS Supply Chain Sols.*, 620 F.3d 1103, 1110-11 (9th Cir. 2010) (citations and internal quotation marks omitted). The employer has discretion in choosing between effective accommodations and "may choose the less expensive accommodation or the accommodation that is easier for it to provide." *Id.* at 1111 (citation and internal quotation marks omitted).

Plaintiff's claim for failure to accommodate fails for the same reasons as her discrimination claim. First, as discussed above, plaintiff is not a qualified individual under 42 U.S.C. § 12111(8). Second, as this Court has already discussed, defendant related the need for in-office work before plaintiff disclosed her desire to continue working from home as an accommodation.[6] Finally, plaintiff argues that defendant rejected the reasonable accommodation of her continuing to work from Arkansas but with "task-specific fly-in schedule – photoshoots one to two times per month, a full week each quarter, trade shows one to two times per quarter and local print vendors under NDA." TAC ¶ 183. However, plaintiff's complaint and accompanying exhibits show that (1) defendant engaged plaintiff in the interactive process; and (2) plaintiff chose to end the interactive process when defendant determined that her preferred accommodation was not reasonable.

---

[6] The complaint also shows that plaintiff did not view her work-from-home arrangement as an accommodation until Coast informed her of the in-office work requirement. Ex. 6, p. 90.

Plaintiff's failure to engage in the interactive process beyond maintaining only her preferred accommodation defeats her claim. *See Allen v. Pac. Bell*, 348 F.3d 1113, 1115-16 (9th Cir. 2003).

**IV. Retaliation**

Under 42 U.S.C. § 12203(a), an employer may not "discriminate against any individual because such individual has opposed any act or practice made unlawful by" the ADA. To state a prima facie case of retaliation under the ADA, a plaintiff "must show that (1) [she] was engaged in a protected activity; (2) the [defendant] took an adverse action against [her]; and (3) a 'causal link' exists between the protected activity and the adverse action." *Goekjian v. City of Portland*, 2025 WL 4670414, *5 (D. Or. Dec. 16, 2025) (citing *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015) (citation modified).

Defendant's arguments are largely a reprise of its argument to dismiss plaintiff's second amended complaint: (1) that plaintiff failed to exhaust her administrative remedies; and (2) that plaintiff fails to allege sufficient facts to establish the but-for causal connection between her alleged protected activities and the alleged adverse actions.

**A. Administrative Exhaustion**

Defendant argues that plaintiff failed to exhaust her administrative remedies because she did not raise retaliation in her complaint to the EEOC. To state a claim for relief under the ADA, a plaintiff must first exhaust administrative remedies with the EEOC. *Thompson v. City of Tualatin*, 3:21-cv-01587-MO, 2022 WL 742682, at *2 (D. Or. Mar. 11, 2022); *see also* 42 U.S.C. § 12117(a)) (incorporating exhaustion requirement of Title VII claims into the ADA). To that end, "[d]istrict courts lack subject matter jurisdiction over discrimination claims that have not been presented to the appropriate administrative agency." *Thompson*, 2022 WL 742682, *2 (citing *Sommatino v. United States*, 255 F.3d 704, 707-08 (9th Cir. 1995)). However, when an employee

"seeks judicial relief for incidents not listed in the original charge to the administrative agency," the judicial complaint may still "encompass any discrimination like or reasonably related to" those allegations made in the agency charge, "including new acts occurring during the pendency of the charge before the administrative agency." *Greenlaw v. Garrett*, 59 F.3d 994, 1000 (9th Cir. 1995) (quoting *Ong v. Cleveland*, 642 F.2d 316, 318 (9th Cir. 1981)) (citation modified).

On September 5, 2024, plaintiff filed a complaint with the EEOC alleging that she was "denied a reasonable accommodation and discharged because of [her] disability." Ex. 1, p. 78. Plaintiff concedes she did not include a claim of retaliation in her EEOC complaint but argues that "an EEOC investigation of retaliation could reasonably be expected to grow" from her statement of facts. Pl.'s Resp. to Def.'s Mot. 23-25 (doc. 27). Plaintiff argues that the EEOC complaint "contained relevant factual allegations" such that the investigation would have revealed the protected activity.[7] But the facts plaintiff's retaliation claim is based on are notably different from the facts alleged in her EEOC complaint. Compare TAC ¶¶ 189-92 to Ex. 1, pp. 77-79. Moreover, nothing in the EEOC charge would permit the Court to infer that she intended to bring a claim for retaliation in her EEOC complaint.

**B. No plausible claim for retaliation**

Even if plaintiff had adequately pleaded that she exhausted the required administrative

[7] Plaintiff bases her argument, in part, on the fact that she listed retaliation as part of her initial EEOC inquiry form. Ex. 3, pp. 82-85. Courts may consider pre-complaint questionnaires "if the charge itself is deficient in recording her theory of the case due to the negligence of an agency representative who completes the charge form" as "evidence that her claim for relief was properly exhausted." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1102 (9th Cir. 2002). Here, there is no evidence that would permit the Court to consider plaintiff's EEOC inquiry form, because there is nothing that indicates the EEOC charge itself was deficient.

remedies, she did not state a cognizable claim for retaliation under the ADA because she did not adequately plead causation. "[B]ut-for causation is the standard applied to ADA retaliation claims." *Easton v. Shulkin*, 2019 WL 2870087, at *2 (D. Or. July 3, 2019) (citation omitted).

Plaintiff alleges in the TAC that the causal connections between the alleged protected activities and the alleged adverse actions include (1) the timing between her disclosure and the relocation demand; (2) the work stoppage; (3) the timing between her decision to proceed with the EEOC and Coast's denying her accommodation; and (4) Coast's "submission of a fabricated document" to Coast's disability insurance carrier and the EEOC after her termination. TAC ¶¶ 193-96. Plaintiff does not allege facts sufficient to permit the inference that those actions would not have been taken but for plaintiff's protected activity.

The Court has already addressed the fact that the timing between her disclosure and the relocation demand does not amount to causation. *Gage*, 2025 WL 1733503, at *2 (temporal proximity can be enough on its own to state a claim for retaliation but that is not so where a complaint alleges facts that make the inference implausible). Nor does plaintiff's allegation that work was withheld from her amount to causation. The exhibits show that work was not withheld because of any protected activity, but because plaintiff communicated her preference to focus on the interactive process, rather than completing her work. *See, e.g.,* Exs. 56-60, pp. 183-187; Exs. 43-44, pp. 165-68. The fact that plaintiff was terminated six days after she informed Coast that she would proceed with the EEOC process does not demonstrate causation. Here again, plaintiff's allegations and exhibits make the inference of causation based on temporal proximity alone implausible. *See* Exs. 52-55, pp. 178-82. Nor does the fact that defendant submitted a job description created in 2024 to the EEOC and Coast's disability insurer infer causation. Again, plaintiff's argument that temporal proximity supplies causation fails.

For the above reasons, the Court agrees that plaintiff has failed to establish that she is a qualified individual within the meaning of the Act, and her claims under the ADA must be dismissed. Moreover, because there are no facts that could possibly sustain a claim under the ADA, plaintiff's complaint is dismissed with prejudice. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005) (dismissing with prejudice appropriate when "it is clear that the complaint could not be saved by any amendment"). Plaintiff has had three opportunities to allege facts to support her claims and has provided no facts that allow the Court to infer defendant's liability.

CONCLUSION

For the above reasons, defendant's motion to dismiss plaintiff's third amended complaint (doc 25) is granted. This case is dismissed with prejudice.

DATED this 23rd day of November, 2026.

/s/ Jolie A. Russo
JOLIE A. RUSSO
United States Magistrate Judge